**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

MARSHA FARMER,                                      :

                                                  Case No. 3:07-cv-175

                Plaintiff,

                                                  District Judge Thomas M. Rose
                                                  Chief Magistrate Judge Michael R. Merz

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.                         :

---

### REPORT AND RECOMMENDATIONS

---

        Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act.  42 U.S.C. §1381a.  With respect to the present case, eligibility is dependent upon disability, income, and other financial resources.  42 U.S.C. §1382(a).  To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §1382c(a)(A).  A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers.  42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application.  *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520 .  First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on August 31, 1999, alleging disability from February 26, 1999, due to a back impairment, arthritis in her right hip, and asthma.  See Tr. 48-61. Plaintiff's application was denied initially and on reconsideration.  *Id.*  A hearing was held before Administrative Law Judge Melvin Padilla who determined that Plaintiff was not disabled and therefore not entitled to benefits under the Act.  *Id.*  Plaintiff did not appeal Judge Padilla's decision.

Plaintiff filed a second application for SSI with a protective filing date of November 20, 2001, alleging disability from February 26, 1999, due to sinusitis, a back impairment, asthma,

3

fibromyalgia, and arthritis in the hip. (Tr. 121-30). Plaintiff's application was denied initially, (Tr. 65-68), and Plaintiff did not appeal that denial.

Plaintiff file a third application for SSI with a protective filing date of March 24, 2003, alleging disability from February 26, 1999, due to a back impairment, hip impairment, fibromyalgia, and asthma. (Tr. 106-08; 169-76). Plaintiff's application was denied initially and on reconsideration. (Tr. 74-77; 79-82). A hearing was held before Administrative Law Judge Daniel Shell, (Tr. 546-79), who determined Plaintiff is not disabled. (Tr. 15-32). The Appeals Council denied Plaintiff's request for review, (Tr. 11-12), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that Plaintiff has severe degenerative disc disease, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 31, finding 2). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. *Id.*, findings 4, 6. Judge Shell then used section 201.24 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 32, findings 10, 11; Tr. 32).

As to her physical impairments, Plaintiff's challenge to the Commissioner's decision is a legal challenge with respect to Social Security Ruling ("SSR") 96-9p. (Doc. 7). In other words, Plaintiff does not specifically challenge the Commissioner's findings with respect to her residual functional capacity. *Id.* Plaintiff's challenge to the Commissioner's decision with respect to her alleged mental impairment revolves around the evidentiary weight the Commissioner gave to the various mental health experts' opinions. *Id.* The Court will first briefly review the evidence with

4

respect to Plaintiff's alleged exertional impairments.

Plaintiff was involved in a motor vehicle accident in 1999 and has had back pain since that time. *See* Tr. 485-86. Objective medical tests have revealed positive results. For example, MRIs indicated degenerative changes of Plaintiff's lumbar spine as well as a disc herniation at L5-S1, *see, e.g.,* Tr. 207; 209; 407, and an EMG showed some abnormalities of the tibial motor study bilaterally. *See,* Tr. 477. In addition, physicians have documented positive clinical findings such as palpable tenderness, decreased ranges of motion, decreased reflexes, and sensory deficits. *See, e.g.,* Tr. 485-86.

In addition to her back impairment, Plaintiff has been diagnosed with fibromyalgia. *See e.g.,* Tr. 343. Over time, treating physician Dr. Henderson has noted that Plaintiff has multiple tender points as well as tenderness and swelling of the metacarpal phalangeal and proximal interphalangeal joints in both her hands. *See, e.g.,* Tr. 478-82. Dr. Henderson has identified Plaintiff's diagnoses as fibromyalgia as well as active synovitis of the small joints of her hands. *Id.*

Plaintiff has participated in physical therapy and in a pain management program with little success. *See, e.g.,* Tr. 285-311; 331; 334; 532-35.

With respect to Plaintiff's exertional impairments, the medical advisor (MA) testified at the hearing that Plaintiff did not satisfy the Listings. (Tr. 566-75). The MA also testified that Plaintiff would be limited to sedentary work with the option to stand for five minutes every hour. *Id.* The MA also testified that Plaintiff should not stand or walk for more than twenty minutes at a time and that a temperature-controlled environment would be reasonable in view of Plaintiff's history of asthma. *Id.* The MA testified further that while Plaintiff did not have any limitations as to the use of her hands on a "day-in/day-out basis", there could occasionally be days on which

Plaintiff might not be able to perform fine motor work with her hands. *Id.*

The Court now turns to Plaintiff's alleged mental impairment.

The record contains a copy of Plaintiff's treatment notes from Advanced Therapeutic Solutions, Inc., ("Advanced Therapeutic"), dated August 15, 2001, through June 29, 2004, and which reflect that Plaintiff received mental health treatment from a counselor as well as psychiatrists at that facility. (Tr. 424-74). Additionally, those records reveal that when Plaintiff was first evaluated, it was noted by treating psychiatrist Dr. Patalinghua that Plaintiff completed the 9th grade, drank a 6 or 12 pack once or twice a month, used marijuana once or twice a month, that her mood was depressed, her affect was blunted, she was in denial as to having a drinking problem, and that her diagnoses were recurrent major depressive disorder, generalized anxiety disorder, and alcohol abuse; she was assigned a GAF of 50. *Id.* In December, 2001, psychiatrist Dr. Toca became involved with Plaintiff's care at Advanced Therapeutic. *Id.*

On April 17, 2002, examining psychologist Dr. Jones reported that Plaintiff's conversation and thought process were normal, her demeanor was resigned and dysphoric, her affect was sad, and that she was restless and maintained limited eye contact. (Tr. 216-22). Dr. Jones also reported that Plaintiff was preoccupied with her own symptomatology, was alert to distracted with regard to her degree of consciousness, her contact with reality was adequate, she presented with marginal to sufficient judgment and common sense, and that she reported that she did not use alcohol or illicit drugs. *Id.* Dr. Jones noted that Plaintiff's full scale IQ was 76, placing her in the borderline range, her memory skills fell in the borderline range, she read at the 6th grade level, and that her diagnoses were recurrent major depression, generalized anxiety disorder, and psychological features affecting physical condition. *Id.* Dr. Jones assigned Plaintiff a GAF of 55 and opined that

her ability to understand, remember, and follow instructions was moderately impaired, her ability to relate to others was moderately impaired, her ability to maintain attention and concentration to perform simple, repetitive tasks was mildly limited, and that her ability to withstand the stress and pressures associated with day-to-day work activities was moderately impaired. *Id.*

In January, 2003, Dr. Toca reported that Plaintiff's mood was depressed, she was anxious and in physical and emotional pain, was oriented, had difficulty staying focused due to being anxious and having panic attacks, that her insight and judgment were average/fair. (Tr. 424-74). Dr. Toca also reported that Plaintiff's diagnoses were major depressive disorder with psychotic features, panic disorder with agoraphobia, and chronic pain disorder and that her GAF was 55. *Id.* Dr. Toca opined that Plaintiff's abilities to remember, understand, and follow short, simple directions was moderately limited, her ability to follow directions on a sustained basis was extremely limited, her ability to maintain attention for a short period was moderately limited, her ability to maintain sustained attention was markedly to extremely limited, and that she could not tolerate being around people. *Id.* Dr. Toca opined further that Plaintiff was not able to tolerate the pressures involved in simple and routine or repetitive tasks. *Id.*

Examining psychologist Dr. Bonds reported on September 9, 2003, that Plaintiff's speech was normal, her mood seemed mildly depressed, her affect was broad and appropriate to thought content, she seemed nervous and tense, she maintained a tense body posture, she was alert and oriented, and that she had sufficient judgment and reasoning abilities to live independently and make important decisions concerning her future. (Tr. 261-66). Dr. Bonds also reported that Plaintiff's verbal IQ was 78, her performance IQ was 83, and her full scale IQ was 78, placing her in the borderline range, her memory functioning was in the borderline to low average range, and that

7

her diagnoses were moderate major depressive disorder and borderline intellectual functioning and she assigned Plaintiff a GAF of 50. *Id.* Dr. Bonds opined that Plaintiff's ability to relate to others was moderately limited, her ability to understand, remember, and follow instructions was moderately impaired, her ability to maintain attention and concentration to perform simple repetitive tasks was not impaired, and that her ability to withstand the stress and pressures associated with day-to day work activity was moderately limited. *Id.*

Dr. Toca reported in January, 2004, that Plaintiff was engaging in self-mutilating behavior, was having an increasingly difficult time leaving her home to go anywhere, her diagnoses were major depressive disorder with psychotic features and panic disorder with agoraphobia, and that her GAF was 55. (Tr. 424-74). Dr. Toca also reported that Plaintiff's abilities to perform work-related mental activities were moderately to markedly to extremely limited and she was unemployable. *Id.*

Plaintiff continued to receive treatment at Advanced Therapeutics and in February, 2005, Dr. Toca reported that Plaintiff's diagnoses were major depressive disorder with psychotic features and panic disorder with agoraphobia, that her GAF was 55, that she was able to function only with the help of others, and that she was not able to perform any work-related mental activities. (Tr. 503-11).

In her Statement of Errors, Plaintiff essentially alleges that the Commissioner erred by failing to properly apply SSR 96-9p and, with respect to her alleged mental impairment, by improperly weighing treating psychiatrist Dr. Toca's opinion and by applying *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997).

8

In support of her first Error, Plaintiff argues that pursuant to SSR 96-9p, she is unable to perform even sedentary work and that the Commissioner erred by failing to properly apply SSR 96-9p.

> SSR 96-9p reads in relevant part:
>
> ...In deciding whether an individual who is limited to a partial range of sedentary work is able to make an adjustment to work other than any [past relevant work], the adjudicator is required to make an individualized determination, considering age, education, and work experience, including skills the individual may have that are transferable to other work, or education that provides for direct entry into skilled work under the rules and guidelines in the regulations....
>
> ...[T]he mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability....
>
> **Manipulative limitations:** Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupations base.... When the limitation is less significant, especially of the limitation is in the non-dominant hand, if may be useful to consult a vocational resource.

SSR 96-9p, 1996 WL 374185 (July 2, 1996) at *4, *8 (emphasis in original).

In addition, the Regulations provide that when a person cannot perform a full range of sedentary work, the adjudicative assessment "required an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations *or the total number of jobs to which the individual may be able to adjust."* 20 C.F.R. Part 404, Subpt. P., App. 2, § 201.00(h)(3)(emphasis supplied).

9

In determining that Plaintiff is not disabled, Judge Shell found, *inter alia*, that Plaintiff was limited to occasional fine manipulation. (Tr. 31, finding 4). Judge Shell then consulted a VE who testified that if an individual has the residual functional capacity which Judge Shell found Plaintiff has and which Plaintiff does not challenge, there are 4,000 jobs in the economy which such an individual can perform. (Tr. 576-77). Judge Shell did precisely what SSR 96-9p and the Regulations require.

Plaintiff does not contend that 4,000 is not a significant number of jobs. Indeed, 4,000 falls within the parameters of *Hall v. Brown,* 837 F.2d 272 (6th Cir. 1988), in which the Sixth Circuit determined that 1,350 jobs was a significant number of jobs. Plaintiff does argue, however, that Judge Shell erred by failing to provide an analysis of whether there was a significant erosion of the sedentary job base. However, Plaintiff provides no support for her position that the Commissioner is required to provide such an analysis. As noted above, Judge Shell did what the Ruling and Regulations require. Accordingly, the Commissioner did not err.

Plaintiff argues in support of her second Error that the Commissioner improperly applied *Drummond.* Plaintiff's position is that the Commissioner should *not* have applied *Drummond* at all.

*Drummond* essentially provides that absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the residual functional capacity finding of a previous ALJ when there was a final decision after a hearing on a prior disability claim containing a finding of the individual's functional capacity. *Drummond*, 126 F.3d at 842. In other words, the Commissioner may not make a different finding in adjudicating a subsequent disability claim unless new and additional evidence or changed circumstances provides a basis of a different finding of the

individual's residual functional capacity.  *See* Social Security Acquiescence Ruling ("SSAR") 98-4(6), 1998 WL 283902 (June 1, 1998).

Again, Judge Shell did what the law requires him to do.   Specifically, Judge Shell determined that there was no significant change in Plaintiff's alleged mental impairments since Judge Padilla's previous decision dated June 15, 2001.  (Tr. 24).  Nevertheless, Judge Shell evaluated the evidence in the record with respect to Plaintiff's alleged mental impairments and indicated that she is somewhat more restricted than Judge Padilla found.  Specifically, Judge Shell found that Plaintiff was not able to perform work that involves "over the shoulder supervision", a finding that Judge Padilla did not make.  The question becomes, however, whether Judge Shell accorded the proper evidentiary weight to Plaintiff's treating psychiatrist's opinion.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir.  2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)).  In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502).  However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue.  *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986).  A treating physician's opinion is to be given

controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

In rejecting Dr. Toca's opinions, Judge Shell noted that the reports in which Dr. Toca reported that Plaintiff was disabled were not in Dr. Toca's handwriting but were signed by Dr. Toca. (Tr. 21; 22; 24-25). In addition, Judge Shell determined that Dr. Toca's opinions are not supported by his clinical notes. *Id.* For example, Judge Shell noted that while Dr. Toca opined that Plaintiff was essentially unable to leave her room or be around others, he assigned her a GAF of 55 which indicates, at worst, "moderate" symptoms and not a GAF of 35 which would be more consistent with the avoidance of others and the inability to work. *Id.* In addition, Judge Shell noted that while, over time, Dr. Toca's clinical notes reveal that he reported that Plaintiff was improving, was feeling less anxious, had an improved mood, was alert and oriented, and that her symptoms were controlled by medication, he indicated in the reported which he signed that Plaintiff was disabled. (Tr. 21-22).

Judge Shell also found that Dr. Toca's opinions were inconsistent with the opinions of the examining mental health specialists as well as the reviewing psychologists. For example, while Dr. Toca signed reports indicating that Plaintiff was disabled, Dr. Jones reported that Plaintiff was, at worst, moderately impaired. Similarly, examining psychologist Dr. Bonds reported that Plaintiff was, at worst, moderately impaired. Finally, the reviewing mental health specialists of record reported that although Plaintiff was markedly limited with respect to detailed instructions and interacting with the general public, she was, at worst, moderately limited with respect to her abilities to perform other mental-related work activities. (Tr. 240-55; 268-84; 312-29).

12

This Court cannot say that the Commissioner erred in his analysis of Dr. Toca's opinions or by rejecting those opinions. As Judge Shell noted, Dr. Toca's opinions, which do not appear to be in Dr. Toca's own writing, *compare* Tr. 433-34; 448-50 *with* Tr. 435-47, are not supported by his treatment notes. For example, Dr. Toca indeed noted over time that Plaintiff was improving, was feeling less anxious, had an improved mood, was alert and oriented, and that her symptoms were controlled by medication. *See, e.g.,* Tr. 460-66. In addition, Dr. Toca consistently reported that Plaintiff was neatly groomed, had no abnormal movements, normal speech, normal thought processes, no delusions, and no suicidal ideation or plan, and that she was improving. *See, e.g.,* Tr. 439, 440, 441, 524, 525, 526. Similarly, as noted above, the examining psychologists and reviewing psychologists of record reported that Plaintiff was, at worst, moderately limited.

This Court concludes that the Commissioner had an adequate basis for rejecting treating psychiatrist Dr. Toca's opinions that Plaintiff was disabled. Therefore the Commissioner did not err as Plaintiff alleges.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

13

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

January 15, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).